

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-0666-09

**JAIME CASAS JUAREZ, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

## ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
## IN CAUSE NO. 12-08-00009-CR FROM THE TWELFTH COURT OF APPEALS
## SMITH COUNTY

**HOLCOMB, J., filed a concurring opinion, in which KELLER, P.J., and PRICE and JOHNSON, JJ., joined.**

I join the Court's opinion but write separately in order to explain in more detail why Juarez's

testimony raised the necessity defense.

At the guilt stage of his trial, Juarez took the stand in his defense and testified in relevant part

as follows:

DEFENSE COUNSEL: And after you got between the apartment complex building [sic], what happened next?

JUAREZ: I ducked down beside a bush in the darkness so that – because I thought

maybe I wouldn't be seen. And I was sitting there trying to get my breath back, because I had ran out of breath about that time from running from the person, whoever it was.

And I was sitting there, and my cousin had already went the other way. At that time, I didn't know where any of them were at. I was sitting there trying to gain my breath back, and then a guy comes around the corner, flashes the light on me.

I jump, I get up, I stand up to run, and I kind of stumbled when I take off again, because I was out of breath. And then somebody jumped on my back, and they put their arms around me like this (demonstrating) and slammed me – well, they started trying to slam me to the ground, and then finally they did slam me to the ground.

And when I got slammed to the ground, I was just – I couldn't breathe, because I was out of breath. And I was telling him to get off of me. And then I heard a radio, and I was trying to tell him to get off of me because I couldn't breathe. I felt like I was going to suffocate. I was in fear of my life.

After that, I figured out it was an officer on top of me, and he was on top of me with his knee of whatever in my back, and my mouth was facing towards the dirt. And he was telling me to stop resisting, and then his hand was above my head around in this area (indicating), and he was pushing on my head and my mouth.

I was breathing in dirt, so I felt like I couldn't breathe. And from that point on, I was starting to feel real light-headed and dizzy, like I was just going to suffocate or pass out or something.

And somehow the officer or the guy – well, I found out he was an officer after I heard the radio, and he told me – after he got on top of me, his hand – his finger got in front of my face from pushing on my face around my check (sic).

I got his finger in my mouth somehow, and *I just bit down to get him off of me, because I felt like I was going to die if he didn't get off of my body* the way I was laying down on my chest.

DEFENSE COUNSEL: Okay. Now, what happened next in terms of your situation with this police officer?

JUAREZ: When I bit him, he got up, and I let go of his finger. And I stood up, and at that time, two other officers came around the corner. And I looked to my right and I seen them, and when I seen them, I knew I was in trouble, so I didn't try anything else.

\* \* \*

DEFENSE COUNSEL: Now, when you went out there that night, did you intend to bite the police officer?

JUAREZ: No, I didn't. *I was just fearing of my life*, so I – *I was worried about my*

*life*, as well as I know who the officer was, so – I mean, no, I didn't intend to do it, no, ma'am.

\* \* \*

THE STATE: You couldn't breathe because of the situation that you put yourself into, right? Right?

JUAREZ: Yeah, I put myself in that situation, but I didn't mean – I didn't mean to bite him.

THE STATE: You accidentally bit another human's finger?

JUAREZ: *That's not what I'm saying*.

THE STATE: Okay. And you're asking for mercy [from the jury] because you know you did it?

JUAREZ: *I couldn't breathe. I was in fear for my life as much as he was in fear for his.*

\* \* \*

THE STATE: Not only are you saying – just so I'm clear, not only are you saying that you had to do what you did, but you didn't even act intentionally, knowingly, or recklessly when you bit the finger of Officer Burge, right?

JUAREZ: Would you ask the question again, please?

THE STATE: When you bit Officer Burge's finger, you did that intentionally. You did – you completed what you set out to do. You would agree with me, wouldn't you?

JUAREZ: I didn't set out to bite his finger.

\* \* \*

DEFENSE COUNSEL: Mr. Juarez, in terms of the biting of the police officer's finger, is it your position that you bit his finger because you couldn't breathe?

JUAREZ: *Yes, it is.*

DEFENSE COUNSEL: Now, in terms of intending to bite his finger, did you that

day set out to bite his finger?

JUAREZ:  No, I didn't.

*  *  *

DEFENSE COUNSEL:  So it's not that you're saying that you didn't bite his finger; you just didn't intentionally bite his finger; is that correct?

JUAREZ:  Correct.

DEFENSE COUNSEL:  Counsel: Pass the witness.

THE STATE:  How else do you bite somebody's finger?

JUAREZ:  I don't know.

THE STATE:  Accidentally?

JUAREZ:  I don't know.

THE STATE:  I mean, was it your desire to bite his finger?

JUAREZ:  Nope.

*  *  *

THE STATE:  Did you act – Ms. Johnston [defense counsel] asked you this: Did you act intentionally?

JUAREZ:  No.

THE STATE:  Did you act knowingly?

JUAREZ:  No.

THE STATE:  Did you act recklessly?

*  *  *

JUAREZ:  No.

*  *  *

THE STATE:  [It's your contention] that this was an accident, right?

JUAREZ:  Yes, it was.

THE STATE:  And how long was the finger in your mouth?

* * *

JUAREZ:  I just bit down, and then I let go.

THE STATE:  Immediately?

JUAREZ:  Yeah.  I bit down hard, and then I let go.

Texas Penal Code § 9.02 provides that "[i]t is a defense to prosecution that the conduct in question is justified under this chapter."  Texas Penal Code § 9.22, in turn, provides in relevant part that "[c]onduct [that is otherwise criminal] is justified if: (1) the actor reasonably believes the conduct is immediately necessary to avoid imminent harm [and] (2) the desirability and urgency of avoiding the harm clearly outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the law proscribing the conduct."

We have held that, in general, a defendant is entitled to an instruction on a defense if that defense is raised by the evidence.  *Shaw v. State*, 243 S.W.3d 647, 658 (Tex.Crim.App. 2007).  A defense is "raised by the evidence" if there is some evidence, from any source, on each element of the defense that would support a rational inference that that element is true.  *Id*. at 657-58.  We have also held that in the particular case of the necessity defense, which is a confession-and-avoidance type of defense, "a defensive instruction is only appropriate when the defendant's defensive evidence essentially admits to every element of the offense including the culpable mental state, but interposes the [necessity defense] to excuse the otherwise criminal conduct."  *Id.* at 659.

Applying these legal principles to the instant case, it is clear that the court of appeals was correct in concluding that the trial court erred in denying Juarez's requested jury instruction on the necessity defense. In Juarez's testimony, recounted above, he essentially admitted to every element of the offense charged, including the culpable mental state. From that testimony, a jury could reasonably infer that Juarez intentionally bit Burge's finger because he reasonably believed that doing so was immediately necessary to avoid imminent suffocation. Juarez testified that he "bit down [on Burge's finger] to get him off of me, because I felt like I was going to die if he didn't get off of my body," that he was in fear for his life, that it was his "position" that he bit Burge's finger because he could not breathe, and that he was *not* saying that his biting of Burge's finger was an accident. Although it is true that Juarez *also* testified that his biting of Burge's finger was an accident and that it was not done intentionally, knowingly, or recklessly, a jury could reasonably discount that part of Juarez's testimony as simply being his lay attempt to explain that he had not desired to bite Burge and had not intended to harm him.

FILED MARCH 31, 2010

PUBLISH